BOTTS v. HAMMOND et al.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1900.)

No. 315.

BANKRUPTCY—DISSOLUTION OF LIENS—COMPOSITION AGREEMENT.

Creditors of an insolvent debtor attached his property, and caused the same to be sold as perishable, and the proceeds paid into court. The debtor then made an assignment, and a composition was arranged, of which all creditors had notice, by which the proceeds of the attachment sale, the property in the hands of the assignee, and certain property of the debtor's wife was made into a fund, to be divided pro rata, and without preferences, among all the creditors. Judgment was suffered in the attachment suits, and the fund was distributed to creditors, all of

whom, except two, accepted their dividends as in full satisfaction of their claims, a proportionate amount being reserved for the two dissenting creditors. Thereafter, and within four months after the attachments, these latter filed a petition in bankruptcy against the debtor, on which an adjudication was made, and a trustee appointed, who applied for an order requiring the attaching creditors to pay over to him the net proceeds of the attachment sale. *Held*, that the court of bankruptcy committed no error in dismissing the trustee's petition, with a proviso that the dissenting creditors should receive their proportionate share of the fund.

On Petition to Superintend and Revise, in Matter of Law, Proceedings of the District Court of the United States for the District of Maryland, in Bankruptcy.

George Whitelock and Frank Gosnell, for petitioner.
Charles W. Heuisler, for respondents.

Before SIMONTON, Circuit Judge, and PAUL and BRAWLEY, District Judges.

SIMONTON, Circuit Judge. This case comes up upon a petition to superintend and revise, in matter of law, proceedings of the district court of the United States for the district of Maryland, in the matter of the estate of Henry J. Clark, a bankrupt. Clark was a merchant doing business in Baltimore under the name and firm of Henry J. Clark & Co. On the 2d of August, 1898, he notified the firm of Hammond & Snyder, who were his creditors in the sum of $4,643.84, that he was in failing circumstances. According to his statement, he owed $11,463.21, and he had assets amounting to $4,923.99. He proposed to make an assignment for the benefit of his creditors, and to make John W. Snyder, one of that firm, his assignee. On the morning of the next day, Snyder had a conference with a number of the creditors, and notified them that the assignment would be made. On the afternoon of that day, however, having received information which induced the belief that Clark did not intend to assign all of his assets, Snyder's firm issued an attachment out of the superior court of Baltimore city, in Baltimore, and under it attached and appraised, as by schedules in the record, the property therein mentioned. Subsequently, the same goods were attached in a suit instituted by John C. Legg & Co. On the 4th of August, 1898, upon the petition of Hammond & Snyder, setting forth the attachment and the property attached, and that the greater part of the property was perishable in its character, and the custody thereof expensive, the superior court of Baltimore city ordered the sale thereof by the sheriff. On the 10th of August the sale took place, and realized, after deducting costs and expenses, $2,138.80, which was deposited in court to the credit of the cause.

A few days after the attachment was issued, Clark made an assignment for the benefit of his creditors to Charles S. Hayden, and in this included all of his property, including that which it was charged was omitted from the schedules shown to his creditors. On the 20th of August both Clark and his assignee, Hayden, made separate motions to quash the attachment, both of which were refused. Thereupon the attaching creditors, ascertaining that they could se-

cure no preference, and Clark and his assignee consenting, a composition was entered into whereby it was agreed, in the language of the day, to "pool their interests." All the proceeds of the attachment case and the property in the hands of the trustee, with an equity of redemption which Clark's wife had in certain leasehold property in Baltimore, made up a fund, which was to be paid to the creditors of Clark pro rata, equally. At first it was supposed that a dividend of 19 cents could be paid, and at that rate a few of the creditors signed. It was then ascertained that 19 cents was too much, and that the correct dividend was 17½ cents. All the creditors of Clark had this offer made to them. On the 1st November, 1898, creditors whose names appear in a schedule in the record accepted the dividend of 17½ per cent. as in full, as a full settlement of their claims. Two of the creditors, Botts & Levering and John C. Legg & Co., did not accept, but demanded a larger dividend. These dissenting creditors were cognizant of the negotiations leading up to the settlement. On the 5th of November, Clark withdrew his pleas to the attachment proceeding, and judgment was had. All the other creditors were paid their dividend thereupon, except these who dissented. Their respective dividends were retained for them in case they should reconsider and accept.

On the 29th of November, 1899, these two dissenting creditors filed their petition in bankruptcy against Clark. On the 27th of December, 1898, he was adjudicated a bankrupt, and on the 6th of February, 1899, Thomas H. Botts was appointed his trustee. On the 10th of March, 1899, Botts, trustee, filed his petition in the court of bankruptcy against Hammond & Snyder, praying a decree that the attachment proceedings instituted by them in August, 1898, be declared null and void, and instructing them to pay over the net proceeds to the trustee, so that it might be administered in bankruptcy. This petition recited, in substance, the facts stated above; charged that the attachment proceedings were instituted collusively with Clark; that they worked a preference, the attaching creditors knowing that Clark was then insolvent; that the withdrawal by Clark of his pleas was intended to precipitate a judgment, which, in the ordinary course, could not be had until January, 1899; and that all of these things were in fraud of the bankrupt act, invalid, and void. Hammond & Snyder answered the petition; denied any collusion with Clark; denied that any preference was sought or obtained; denied any intention to evade the provisions of the bankrupt act; and averred that all the property of the insolvent debtor was distributed equally and pro rata among his creditors. The district court heard the petition, and dismissed it, with costs, with a provision, however, that their dividends of 17½ per cent. be paid the petitioners. Thereupon the record has been transmitted to this court for its superintendence and revision.

The case, as it comes before us, is this: The attaching creditors pursued in the city court of Baltimore the proper remedy, in accordance with the law and practice of that court. The legality of the proceeding having been challenged, the matter was adjudicated, and the proceedings were sustained. The result was the crea-

tion of a fund in the charge of the court issuing the attachment. These proceedings went to judgment, and the fund was taken out of the control of the defendant. Then came a settlement. All the creditors were notified. The fund in the hands of the court, all the property in the control of the defendant and his trustee, and certain other property, over which no creditor had any claim, were put together. The proceeds were allotted among all the creditors, equally and ratably. With the consent of all but two of them, these proceeds were paid out to all but these two creditors. Each received his share, and each gave a full release to the debtor. So this is a fact accomplished. The accepting creditors have been satisfied, and have released their debtor. All this was done when there was in existence no proceedings whatever to make it unlawful. There is nothing in the record to induce the conclusion that any fraud on the bankrupt act was intended. An equal distribution of the estate of the debtor was made among all his creditors, without preference or priority, and the scope and purpose of the bankrupt act was accomplished. And the final consummation of the arrangement was effected five days after the involuntary feature of the bankrupt act went into effect. The lien which began with the attachment proceedings was perfected, foreclosed, and ended. The rights of purchasers under the order of sale are secured under section 67, subd. f, of the bankrupt act. The money in hand has been distributed, and the creditors who received it in full consideration cannot now be compelled to refund it.

The proceeding in bankruptcy was commenced on the 29th of November, 1898, 24 days after the distribution of the money. Upon what can the bankrupt court act? Subdivision "c" of section 67 of the bankrupt act declares that the lien created by, or obtained in or pursuant to, any suit or proceeding, in law or equity, including an attachment or mesne process, begun against a person within four months before the filing of the petition in bankruptcy by or against him, shall be dissolved upon a certain state of facts; or, if the dissolution should militate against the best interests of the estate, may be preserved for the benefit of the estate, the trustee in bankruptcy being subrogated to all rights thereunder. Subdivision "f" of the same section declares all such attachments void, and the property affected discharged from the lien, passing to the trustee, unless the court shall think proper to preserve the lien for the benefit of the estate, in which case the lien shall pass to the trustee. Both of these subdivisions deal with the lien as existing. But in the case before us the lien had been merged in the judgment; the property had been sold under lawful orders of the court, having full jurisdiction; the money has been distributed, and the lien gone. There is nothing upon which the subdivisions of this section can act or to which these provisions can apply. Were it possible for the district court, sitting in bankruptcy, to go back, and set aside every step taken, put the trustee in possession of the property, let him administer the same de novo, and pursue all the steps which have been taken, only with increased cost and expense, the petitioning creditors have lost all claim on the process of the court by their

delay, after full notice, in taking any steps until the money was distributed, and all the other creditors had committed themselves and had discharged their debtor. See Simonson v. Sinsheimer, 37 C. C. A. 344, 95 Fed., at page 954.

There is another consideration. As the case is presented to the court, all the creditors, except the petitioners, have released their claims. If the prayer of the petition be granted, and the money realized from the attachment proceedings be ordered to be paid to the trustee, these petitioning creditors will be paid in full, and the equality between the creditors destroyed. As was well said in Blake, Moffitt & Towne v. Francis-Valentine Co. (D. C.) 89 Fed. 691, the national bankruptcy act is remedial, and should be interpreted reasonably and according to the fair import of its terms, with a view to effect its objects and to promote justice. We concur in the views of the court below. The petition is dismissed.