MARINE SAVINGS BANK *v.* NORTON.[1]

1. CORPORATIONS—MORTGAGES — PRINCIPAL AND AGENT—RATIFI-
CATION.
  The giving of a chattel mortgage by the president and general
  manager of a corporation, to secure an existing indebtedness,
  the proceeds of which had been used in the business for the
  benefit of the corporation, to the knowledge of its directors
  and officers, is ratified by the acquiescence of the corpora-
  tion.

2. CHATTEL MORTGAGES—RECORDING—CREDITORS PREJUDICED.
  The renewal by a creditor of notes due him and the receipt of
  various payments on his debt after knowledge that a chattel
  mortgage given by his debtor had been filed, bars his right to
  object to the validity of the instrument on the ground that
  it had been withheld from record

3. BANKRUPTCY—TITLE OF TRUSTEE.
  Under the bankruptcy act the trustee takes the property of
  the bankrupt, in cases unaffected by fraud, in the same
  condition the bankrupt holds it, and subject to the same
  equities.

4. CHATTEL MORTGAGES—RECORDING—VALIDITY—CREDITORS IN-
JURED.
  The omission to record a chattel mortgage covering after-
  acquired property affects its validity only as to creditors
  who became such during the time while it was withheld from
  record.

5. BANKRUPTCY—LIEN OF CREDITORS.
  An adjudication in bankruptcy creates no lien in favor of
  creditors, upon property of the bankrupt previously sold un-
  der a chattel mortgage.

6. CHATTEL MORTGAGES—CREDITORS INJURED.
  A creditor of the bankrupt who understood from a commercial
  report that the mortgage covered all stock and machinery,
  when it affected only the former, is not prejudiced by a
  reformation of the instrument so as to include after-acquired
  chattels.

---

[1] Rehearing denied May 7, 1910.

7. REFORMATION OF INSTRUMENTS — MORTGAGES — AFTER-AC-
QUIRED PROPERTY—EVIDENCE.

 The admitted error of parties in omitting to include after-
acquired property from a chattel mortgage is sufficiently
supported to warrant a decree reforming the mortgage, by
evidence that the parties subsequently to its execution
treated such property as included.

8. EQUITY—CLEAN HANDS.

 Evidence *held* not to sustain the claim that complainant who
prays for the reformation of a chattel mortgage does not
come into court with clean hands.

9. REFORMATION OF INSTRUMENTS — MISTAKE OF LAW— JURISDIC-
TION.

 The failure to include after-acquired property in a chattel
mortgage is a mistake of fact which may be corrected in
equity.

10. SAME—BANKRUPTCY—LACHES—CHATTEL MORTGAGES.

 In a case where the agreement to include subsequently
acquired chattels in a mortgage was acted upon by fore-
closure and sale, it is too late for the trustee in bankruptcy
to attack the proceedings, as to property of which he
had never had possession, and against which no liens had
attached.

Appeal from St. Clair; Law, J. Submitted December
15, 1909. (Docket No. 143.) Decided April 1, 1910.

Bill by the Marine Savings Bank and others against
Charles E. Norton, trustee in bankruptcy of Lindow
Bros.-Beers Company, for the reformation of a chattel
mortgage and to enjoin an action at law. From a decree
dismissing the bill, complainants appeal. Reversed, and
decree entered for complainants.

*Frank T. Wolcott,* for complainants.

*Henry C. Walters* (*E. S. Black,* of counsel), for de-
fendant.

McALVAY, J. Complainants filed their bill of com-
plaint against defendant praying for the reformation of a
certain bill of sale given as security for the purpose of cor-

recting the description of the property to include certain after-acquired and manufactured property intended to be described, also for an injunction against defendant trustee from prosecuting an action at law against complainants, and that said trustee and the creditors he represents may be held equitably estopped from asserting any claim against the validity of such security. The case was heard upon pleadings and proofs taken in open court, and a decree was granted denying the relief and dismissing the bill.

Upon an appeal by complainants a large record is presented, and although there appears to be practically no dispute upon the material facts involved, and the case will be determined upon questions of law, yet it will be necessary to give considerable space to a statement of the facts in the case.

The bankrupt, Lindow Brothers-Beers Company, was a Michigan corporation, organized and doing business at Marine City, Mich., engaged in retailing lumber, posts, lath, shingles, and other materials, also in manufacturing sash, doors, blinds, and tables. It was incorporated in March, 1904. This incorporation was brought about by the members of the copartnership of Lindow Bros. & Beers, who for several years theretofore had at that place been engaged in a retail lumber business, owning and running a planing mill, and manufacturing doors, sash, etc., and was composed of John W. Lindow, Ferdinand H. Lindow, and John W. Beers. They desired to organize this corporation and secure additional capital to go into the business principally of manufacturing certain patented extension tables. Their assets consisted of certain real estate in Marine City, a dock on Belle river, a planing mill and machinery, also a stock of lumber, paint, nails, glass, and other merchandise and personal property. The real estate was subject to a mortgage of $7,500, and the personal property was subject to a chattel mortgage to the Marine Savings Bank to secure a note of the copartnership at that bank of $4,000.

The corporation was organized to take over the business and assets of this partnership and to engage in the business above designated. A resolution was adopted at a meeting of the stockholders of the corporation who included the members of the copartnership with others, on March 24, 1904, and afterwards the same resolution at a meeting of the directors who included these copartners and four others, on the same day authorizing a conveyance to it by Lindow Bros. & Beers of all their right, title, and interest in said real estate, describing it, and machinery at an agreed consideration of $11,900, also all paint, nails, glass, horses, wagons, etc., office furniture, and safe as per inventory at $1,350, also all stock on hand in their yard and all merchandise and goods in process of manufacture, and all other personal property as per inventory, $15,243.80, also to assign to the corporation the contract relative to a patent extension table to be manufactured by the corporation and the good will of the business, in consideration of which transfer the president and secretary of the corporation were instructed to issue to these parties, or to whomever they might request, $24,480 capital stock at par and to execute and deliver to them the corporate note for $4,010.

John W. Lindow was elected president and general manager, E. S. Jameson, secretary, and John W. Beers, treasurer, of the corporation. The property was transferred to the corporation, and the stock issued as directed; but the note for $4,010 was not executed and delivered. The books of the corporation show that a note then held by the Marine Savings Bank, secured by chattel mortgage on personal property included in this transfer, was assumed by the corporation when it came due on May 7, 1904, and the corporation made a payment of $300 upon it and gave its note for the balance of $3,700. The corporation later borrowed $500 from this bank, giving its note therefor, and on August 8, 1904, at the time the first note came due, gave its note for $4,200, which included both amounts. When the additional amount of $500 was

borrowed, the cashier of the bank insisted upon chattel security for the entire indebtedness to cover all personal property on hand, and that acquired afterwards. Such an arrangement was entered into between the bank and certain officers of the corporation, and as security a bill of sale was made and executed by the president and general manager, and delivered to the bank, on September 2, 1904.

It reads as follows:

"Know all men by these presents: That Lindow Brothers-Beers Company, a domestic corporation of the city of Marine City in the county of St. Clair and State of Michigan, of the first part, for and in consideration of the sum of four thousand two hundred dollars, lawful money of the United States, to it paid by Marine Savings Bank, a corporation of the same place, of the second part, the receipt whereof is hereby acknowledged, has bargained and sold, and by these presents do grant and convey unto the said party of the second part, its assigns, all the following goods and chattels, to wit: All the lath, lumber, posts, shingles, and all other material now located in our lumber yard in the city of Marine City; also, to cover all other lumber, lath, posts, and shingles that may be purchased by first parties in connection with their business; also, all manufactured goods, such as sashes, doors, blinds, tables, mouldings, and glass, and all other manufactured material belonging to said Lindow Brothers-Beers Company, a corporation, and now in its possession at its lumber yards in the city of Marine City. To have and to hold, the same unto the said party of the second part, its administrators and assigns, forever. And the said party of the first part, for itself, does covenant and agree to and with the said party of the second part, its executors, administrators, and assigns, to warrant and defend the sale of said property, goods, and chattels hereby made with the said party of the second part, its executors, administrators, and assigns, against all and every person or persons whatsoever. This bill of sale is given as collateral security to two certain promissory notes given by first party to second party for $3,700.00 and $500.00, aggregating $4,200.00, and security for any renewals thereof.

" In witness whereof, it has hereunto set its hand and seal this second day of September, 1904.
       " LINDOW BROTHERS-BEERS COMPANY, L. S.,
              " Per JOHN W. LINDOW, L. S., President.
" Signed, sealed, and delivered in presence of GEO. W. CARMAN.
" Filed April 21, 1905."

At the time this security was given, it was not filed at the request of the officers of the corporation who were engaged in selling its capital stock for the purpose of purchasing machinery and erecting buildings to increase facilities for carrying on business, and between that time and the date of filing this security, April 21, 1905, did realize on the sale of stock the sum of $3,500, substantially all of which was used to pay debts, but no part of which was applied on this indebtedness. Between the time of giving and recording this mortgage security, the incorporation incurred debts to a considerable amount upon credit then extended to it.

After the incorporation cash was realized from the sales of capital stock amounting to $12,000. Nothing, however, was paid reducing the indebtedness to the bank. Some time later, and about the time the mortgage was filed, an application was made to the bank by the general manager of the corporation to release more than $2,000 worth of lumber held under the mortgage. A committee of the directors of the bank went to the plant and made an inventory of all stock and material, including tables completed and partly finished, as pointed out by the general manager, who transacted the business, as being included in the security, and relying on his statement to that effect, and upon such examination being satisfied that the property was sufficient security, consented to the release of this lumber which was admittedly covered by the mortgage, and which was then sold by the corporation and the proceeds paid to its general creditors, but none was paid to the bank. During the first year of its incorporation, the company increased by actual additions in buildings, etc.,

its real estate account $9,768, and its machinery account $3,534. The two items amount to about $1,000 more than the amount of stock sold during that time. The record shows that these improvements and additions were made for the purpose of providing for the manufacture of tables. Later the business was not successful, and efforts made to interest more capital or to change location failed. The bank, not being able to obtain any payment on the indebtedness secured by its mortgage, began foreclosure on February 6, 1906, and by the sheriff took possession of such of this property as was pointed out by the president and general manager as included in the security, and gave due notice of foreclosure sale to take place February 13, 1906. At the time of taking possession of this property for the purposes of foreclosure, and at the time of said sale, none of the creditors of the corporation had any lien upon it by levy, attachment, judgment, or in any other way; nor had any suits been commenced by any creditors prior to the date of sale, nor were any suits by creditors now pending.

On February 13, 1906, the day of the sale, the attorney of petitioning creditors served notice on the bank that an involuntary petition in bankruptcy had been filed February 8, 1906, and that it was claimed that the mortgage did not cover the property taken or goods manufactured after September 2, 1904, and that the creditors had precedence over the bill of sale, for the reason that their claims accrued after the making of the bill of sale and before the filing thereof. The property taken on foreclosure was sold in certain small parcels for $503.25 to different persons, and the balance to the Marine Savings Bank for $1,700. Afterwards the bank sold what it had purchased to complainants Saph and Fredericks for sufficient to satisfy the balance of its claim, including costs and expenses.

On February 8, 1906, certain creditors filed a petition in bankruptcy in the Federal court against this corporation. On February 15th its answer was filed admitting insolvency, and on the 19th it was adjudged bankrupt by

the referee.   At the first meeting of creditors defendant, Charles E. Norton, was elected trustee and qualified on the same day.   On this day Mr. Saph was present and requested the referee to make an order authorizing the trustee to permit himself and Fredericks the use, on reasonable terms, of the buildings where this property was stored.   No objection being made by the creditors and their attorneys who were then present, the referee instructed the trustee to allow them that privilege on reasonable terms.   On March 10, 1906, notwithstanding such order, the trustee, under the advice of counsel, took off the locks belonging to Saph and Fredericks that were on the buildings and took possession of the property purchased by them from the bank, and on the same day filed a petition in the Federal court asking for a restraining order to prevent them from interfering with the possession of the trustee, and also a petition that they be adjudged guilty of contempt for interfering with the trustee.   Afterwards, when their answers were filed to these petitions, they were discharged from the contempt proceedings, the restraining order was dissolved, and the trustee instructed to give them possession of the property and permit them the use of the premises on reasonable terms.   The property was then disposed of by Saph and Fredericks at a small net profit.   Nothing further appears to have been done until July 12, 1906, when the attorneys for the trustee demanded of the bank the sum of $4,000, the value of the property taken, and gave notice if it was not paid within five days suit would be brought.   On September 1st an action of trover was instituted by the trustee against the complainants in the suit at bar.   On October 17, 1907, the bill of complaint in this case was filed for the reformation of the mortgage contract and for an injunction restraining the action in trover, for which a bond in the sum of $10,000 was filed.

According to the schedule of liabilities in the bankruptcy proceedings, the amount of unsecured liabilities are as follows:   Preferred labor claims, $634.87; bills pay-

able, $8,072; accounts payable, $2,746—total, $11,452.87.

The record does not show what amount, if anything, is due on accounts incurred between September 2, 1904, and April 21, 1905, nor what property purchased between those dates, if any, was on hand at the time foreclosure proceedings were had. That a court of equity has jurisdiction to correct mistakes in deeds and other written instruments, and to reform the same to comply with the intention of the parties, as a general proposition, is not in dispute in this case.

The first question raised relates to the validity of the notes and mortgage given to the bank by the corporation. The mortgage is attacked as invalid because given without authority and not afterward ratified, and the notes, as without consideration—at least no present consideration. These objections were first raised upon the hearing of the case. The bill of complaint alleges the indebtedness of $4,200 represented by two notes of $3,700 and $500, and the mortgage given to secure them, all charged as having been made, executed, and delivered by the corporation to the bank. The answer makes no denial on oath of the execution and delivery of the notes or the authority of the officers so to do; nor is there any denial of the execution of the mortgage.

As appears in the statement of facts, authority was given to execute and deliver to the members of the partnership, as part payment for the property transferred to the corporation by them, a note for $4,010. What the officers of the corporation did was to assume a note of like amount given by the firm, and held by the bank, and when it came due a payment of $300 was made upon it by the corporation, leaving a balance of $3,700 for which it gave its note. It had borrowed from the bank in the ordinary course of business $500 and given a note therefor. In this manner the instructions of the stockholders and directors to give a $4,000 note were in effect carried out, and for a present consideration, *i. e.*, part of the purchase price of property received. The $4,000 note au-

thorized by the corporation was for the purpose of taking care of this liability of the copartnership.

The transaction was entered upon the books of the corporation at the time, and the record does not show that it was ever questioned. These are the notes referred to in the mortgage, and to secure which it was in terms given. They were later renewed and combined into one note of $4,200, which was executed by President and General Manager Lindow, and indorsed by Treasurer Beers, and was renewed from time to time. There is no record of any action of the board of directors authorizing the execution of these specific notes; nor does there appear of record any action authorizing the execution and delivery of the mortgage security. This indebtedness and the mortgage were discussed before a full board of directors after the mortgage was given, and the giving and execution of it were not questioned.

President and General Manager Lindow contracted all of the indebtedness of the corporation. He made loans at this and another bank, incurred expenses of more than $12,000 in erecting buildings, buying machinery, and conducting the business of the corporation, and was permitted to do so, yet there is no record giving him any authority in any specific instance, and the record does not show that any other act of his was ever questioned. There is no question of fraud or bad faith in any of these transactions. He was the largest stockholder and the active man of the concern and was held out to the public as having authority to transact the business of the corporation. It has acquiesced in, adopted, and ratified all that he has done. Under these circumstances the corporation ought not to be allowed to avoid his acts, but should be bound by them. *Preston Nat. Bank* v. *Purifier Co.*, 84 Mich. 384 (47 N. W. 502), and cases cited; *Hirschmann* v. *Railroad Co.*, 97 Mich. 384 (56 N. W. 842); *Michigan Slate Co.* v. *Railroad Co.*, 101 Mich. 26 (59 N. W. 646).

The trustee in bankruptcy,—

"Under the bankrupt act, takes the property of the bankrupt at the date of the adjudication, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt." *York Manfg. Co.* v. *Cassell*, 201 U. S. 352 (26 Sup. Ct. 481), citing *Thompson* v. *Fairbanks*, 196 U. S. 516 (25 Sup. Ct. 306).

In stating that there was no question of fraud or bad faith in the transactions between the parties in this case, our conclusion is founded upon our examination of all of the evidence, which fully justifies the finding of the trial court that—

"There seems to be no doubt but that the officers of the complainant bank believed in good faith that the mortgage covered all of the property of the Lindow Bros.-Beers Company in both the milling and table departments, including manufactured goods and material on hand at any future time."

The learned trial judge might have added the same statement as to the officers of the corporation who were connected with the transaction.

Relative to the question of withholding the mortgage from record from September 2, 1904, until April 21, 1905, it is conceded that no creditor who did not during that time extend credit to the bankrupt can avoid it, and it is not claimed by any one that after it was filed there was any fraud, active or constructive, practiced in relation to it. We have stated that the record is silent as to the amounts, if any, due on accounts incurred between the dates mentioned. The subject is but briefly referred to in the record. We infer from the testimony of the bookkeeper and the absence of other proof that such accounts were substantially all paid. But one creditor makes any such claim, and it appears that after he knew the mortgage was filed he received payments on his account and repeatedly had notes to him renewed. It follows that the question as to whether this mortgage was void as to such creditors is eliminated from the case, and the ques-

tion of the construction of the statute relative to chattel mortgages (section 9523, 3 Comp. Laws), which has been presented at length and discussed in the briefs of both parties, will not require determination.

We come now to the consideration of the right of the defendant trustee, as representing the general creditors of the bankrupt, to interpose the defenses relied upon and presented. We take it that it will not be disputed that he, as such trustee, will be limited to such defenses on their behalf only as they would be entitled to rely upon.

Attention is again called to the fact that no liens of any description have attached to this property; that under the mortgage regular foreclosure proceedings were had, by taking possession of all the property claimed under it, giving notice, and making sale before the issuing or service of any process or restraining order in bankruptcy, or any other proceedings against a complainant bank or the sheriff. The petition in bankruptcy was filed before the sale, but the adjudication of bankruptcy was made afterwards. Such adjudication, however, does not create a lien in favor of the creditors, and is not equivalent to a judgment attachment, or other specific lien upon the assets of the bankrupt. *York Manfg. Co.* v. *Cassell*, 201 U. S. 344 (26 Sup. Ct. 481).

The record does not show that any creditors were misled on account of the wording in the description of the mortgage sought to be reformed. One witness, a creditor, was produced. It does not appear that he ever saw the mortgage, or knew what the description in the mortgage actually covered. He had seen a Dun & Co. report, made a few days after the mortgage was filed, which showed, " Chattel mortgage, $4,000.00," and,

" The records show that this mortgage covers all material located in lumber yard and in connection with the lumber business, but is not on the machinery."

This witness said :

" I did not ever consider for one moment that the mort-
160 MICH.—40.

gage covered anything more than it showed. I never heard of a mortgage that did do so. * * * I considered that it was a chattel mortgage on *stock and machinery*."

This is his construction of what he thought the mortgage covered, which, if true, would double the security. It is of no value as evidence that he was misled and is all there is in the case upon that subject. There are no rights of stockholders of the bankrupt corporation to be adjusted in this suit. It is solely a dispute between the complainants and the trustee representing the general creditors. If this reformation is proper to be made between the parties to the mortgage, these general creditors cannot in this case object.

The parties to the mortgage agree that it does not contain the contract intended, which was agreed upon between them. There is no dispute between them, and no claim that either was misled by the other. After the mortgage was executed and delivered, both parties to it acted upon the belief that it covered and included all after-acquired manufactured goods, tables, and material. Of the lumber about which there is no dispute, upwards of $2,000 worth was released by complainant bank at the mortgagor's request, after a committee of the bank directors had made a personal examination of the property and an estimate of its value, in company with the president and general manager, who pointed out to them these after-acquired manufactured goods and material as covered by the mortgage, and they agreed that there would be enough property remaining after releasing this lumber to secure the bank indebtedness, and upon this investigation and report the lumber was released. The proceeds of this lumber were applied to the payment of debts, and none was paid to the bank, nor did it receive any of the receipts realized from capital stock sold. These acts bear but one reasonable construction, and that is that the after-acquired property was included in their agreement.

It is urged that complainant bank does not come into court with clean hands and is therefore not entitled to re-

lief.   Our examination of the evidence and our conclusions already expressed upon certain features of this case do not sustain such a contention.   It appears to us that the contrary is true.   These acts of complainant bank have been held by the trial court to have been in good faith.   The court found:

"There seems to be no doubt but that the officers of complainant bank believed in good faith that the mortgage covered all of the property of Lindow Bros.-Beers Company, in both the milling and the table departments, including manufactured goods and material on hand at any future time."

There remains for consideration the question whether the court on the case presented will decree a reformation of the description of the property in this mortgage to include after-acquired material, etc., as prayed in the bill of complaint.   It is claimed that, the mistake sought to be corrected being a mistake of law, no relief will be granted.   The record supports the contention that the after-acquired property was included in the oral agreement, and was left out of the writing by a mistake of fact.   We do not find it necessary to discuss or question the attitude of this court in former opinions on the proposition that equity will not relieve from a mistake of law. All the cases in this State where such a rule was stated are where one party to the contract denies the mistake and opposes reformation.   In no case have the parties agreed as to the terms of the oral contract under the same mistake and written an instrument which does not express such agreement because a material portion has been omitted by mistake.   There are well-considered cases which hold that under such circumstances reformation will be granted.   *Pitcher* v. *Hennessey*, 48 N. Y. 415, at pages 423, 424, and cases cited; *Stafford* v. *Fetters*, 55 Iowa, 484 (8 N. W. 322), and cases cited; *Clayton* v. *Bussey*, 30 Ga. 946 (76 Am. Dec. 680); 34 Cyc. p. 914*c*, and cases cited; *Lee* v. *Percival*, 85 Iowa, 639 (52 N. W. 543).

Most of these are cases from courts holding the rule that relief will not be given from a mistake purely one of law. Some writers hold that such cases are made an exception to the general rule. It may be inferred from some of the opinions, particularly the New York case, which holds that it matters not whether such a mistake may be called one of law or of fact, that the true reason for such decisions is because the mistakes are really mistakes of fact and not of law. The mistake in this case may be said to have been proved beyond a reasonable doubt. It is proved to have been mutual to both parties, and the writing does not express the agreement of the parties when their minds met. It is not necessary in this case that from the instrument it must appear to third parties that something was intended and not expressed.

There is another reason why defendant cannot contest complainant's contention in this case, and that is that he comes in too late. Complainant bank has always claimed this after-acquired property under this mortgage, which does not in terms provide for future acquisitions, and its claim is undisputed until after foreclosure and sale. A strong equity is raised in favor of the mortgagee as against future additions, and, though that equity would not prevail against a levy while it was no more than a general equity, yet, where by valid and formal agreement and otherwise it has become actually attached to the goods before levy, it would prevail. *People* v. *Bristol*, 35 Mich. 28, at page 33.

By agreement this property was taken by the mortgagee from the possession of the mortgagor, advertised, and sold. No liens had attached, and none have ever been claimed. The property was never in the possession of the trustee. The contest of defendant is not timely. *Cameron* v. *Marvin*, 26 Kan. 612; *Kelley, Maus & Co.* v. *Andrews*, 102 Iowa, 119 (71 N. W. 251); Jones on Chattel Mortgages (5th Ed.), § 60; *Dolan* v. *Van Demark*, 35 Kan. 304 (10 Pac. 848); 2 Story on Equity Jurisprudence (13th Ed.), § 1231.

Complainant bank had a right to foreclose its lien. *In re Mertens*, 144 Fed. 818, 75 C. C. A. 548 (15 Am. Bankr. Rep. 362); *Peck, Trustee* v. *O'Connell*, 6 Am. Bankr. Rep. 93; *Botts* v. *Hammond*, 99 Fed. 916, 40 C. C. A. 179 (3 Am. Bankr. Rep. 775).

The decree of the circuit court is reversed, and a decree will be entered for reformation and a perpetual injunction as prayed, such reformation to take effect as of the date of the original instrument, with costs of both courts to complainants.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.