THE PRINZ EITEL FRIEDRICH.

(Circuit Court of Appeals, Second Circuit.  May 12, 1913.)

Nos. 221, 222.

COLLISION (§ 95*)—STEAMSHIP AND MEETING TOW—FAULT.

  A decree affirmed which, based on conflicting testimony of witnesses, most of whom were heard before the court, *held* a steamship solely in fault for a collision with a lighter in tow of a meeting tug in the Hudson river in the early morning.

  [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

  Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeals from the District Court of the United States for the Southern District of New York.

Suits in admiralty for collision by Carl Franck and others and by the Empire Lighterage & Wrecking Company, owners of the lighter Eagle and her cargo, against the steamship Prinz Eitel Friedrich; Hamburg-American Line, claimant.  Decrees for libelants, and claimant appeals.  Affirmed.

On appeal from decree of the District Court for the Southern District of New York.  The first decree was entered July 12, 1912, holding the steamship Prinz Eitel Friedrich, of the Hamburg-American Line, liable in the sum of $16,203.03 damages, interest and costs, sustained by the, appellees Carl Franck et al., owners of the cargo on the lighter Eagle, by reason of a collision with the steamship.  The lighter was at the time in tow of the tug Bluestone Co.  The second decree was entered September 9, 1912, in favor of the Empire Lighterage & Wrecking Co., owner of the Eagle, against the steamship for damages, interest and costs in the sum of $3,489.38.  The claimant, the Hamburg-American Line, has appealed in both cases.

Harold G. Cortis, of New York City, for appellant.

Foley & Martin, of New York City (John F. Foley and Frank A. Spencer, Jr., both of New York City, of counsel), for Empire Lighterage & Wrecking Co.

Lawrence Kneeland, of New York City, for appellees Franck and others.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge.  This controversy involves several complicated questions of fact, in the decision of which the District Judge had, what we have not had, the great advantage of seeing and hearing seven of the ten witnesses examined.  The appearance and conduct of a witness on the stand may be such as wholly to discredit his testimony, and yet when read from the printed record, it may give no indication of being fabricated or distorted.  Recognizing this fact, we have, with few exceptions, followed the rule to adopt the findings of the trial judge upon the facts, where the witnesses were examined orally before him.

The collision occurred in the North River about the center, but probably nearer the New York than the New Jersey side. The time was about 7 o'clock a. m. January 5, 1911, and the place somewhere between Pier 4 and Barclay street. The weather was clear except for a slight haze. All vessels had the proper lights set and burning.

The steamship Eitel Friedrich was proceeding from Pier 15, East River (about at Wall street), around the Battery to Pier 65, North River. She was attended by three steam tugs which were to assist her in docking and was under her own steam. She was making 6 knots an hour. The lighter with which the steamship collided was in tow of the tug Bluestone Co. on two hawsers 15 fathoms long made fast to the port and starboard corners of the lighter. She was square ended, 90 feet long and 31 feet wide. She had no rudder or motive power. Her cargo, consisting of chicory root and paper, was stored below and on deck. The speed of the tug was 4 to 5 miles an hour. Her destination was the Long Island Railroad dock, East River. The tug and tow had come from Hoboken, and at the time of the collision were proceeding down the North River about as far distant from the New York shore as was the Eitel Friedrich going up. The vessels were then meeting head on or nearly so and the rule required that they should give a single blast and pass port to port. Judge Holt found that it was most improbable that the Bluestone Co. should have given a two-blast signal in such circumstances and we think he was correct in so finding. All the circumstances required that she should go to the right. It was for her advantage to do so, as she had the tide with her and would have lost much of this advantage had she gone close to the New York piers. She had a large clumsy lighter on a hawser. The lighter had no rudder and might sheer in crossing the tide. Then, too, the tugs attending the steamship were navigating between her and the New York piers and we think it most improbable that the tug should have given a two-blast signal and have attempted to haul her unwieldy tow across the steamship's course and thus complicate her navigation with the tugs which were proceeding up the river between the steamship and the New York shore.

The judge found that the tug gave but one blast and we think that this finding is supported not only by the testimony but by the probabilities of the situation and we see no reason why this finding of fact should be disturbed.

The decree is affirmed.