## CAREY v. DONOHUE.

(Circuit Court of Appeals, Sixth Circuit. December 2, 1913.)

No. 2,368.

**1. BANKRUPTCY (§ 306*)—DEED BY BANKRUPT—VACATION—MODE OF REVIEW.**

A decree in a suit by a bankrupt's trustee to set aside an instrument in form a deed from the bankrupt conveying certain described real estate was reviewable by appeal and not by writ of error.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 306.*

Appeal and review in bankruptcy cases, see note to 43 C. C. A. 9.]

**2. BANKRUPTCY (§ 306*)—REVIEW—GROUNDS FOR REVERSAL—PREJUDICE.**

Where, in a suit by a bankrupt's trustee to set aside a deed by the bankrupt, the bill as amended did not clearly show whether it was intended to charge that the instrument was given with the intent to defraud creditors or was a preference, but defendant understood the trustee to charge the execution of a preference, and the case was so tried without challenge, a decree would not be reversed because of omission to charge that the grantee had reason to believe that it was intended to give a preference forbidden by law, since the only effect would be to reverse and remand for the amendment of the bill and re-entry of the decree.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 306.*]

**3. BANKRUPTCY (§ 303*)—TRANSFER—PREFERENCE—EVIDENCE.**

In a suit by a bankrupt's trustee to set aside a conveyance of real property as a preference, evidence *held* to warrant a finding that the bankrupt, at the time he executed the instrument, was insolvent; that the instrument, if sustained, would grant a preference to the grantee; and that the latter had reasonable cause to believe that the transfer would, if carried out, effect the preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.*]

**4. BANKRUPTCY (§ 166*)—PREFERENCES—INSOLVENCY—NOTICE TO GRANTEE.**

In general, mere suspicion on the part of a creditor that his debtor is insolvent, or that the effect of a given transaction with him will amount to a preference, is insufficient to impute notice to the creditor so as to invalidate the transfer, nor is the general reputation of the debtor's solvency a safe test of the creditor's good faith.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

**5. BANKRUPTCY (§ 166*)—PREFERENCES—NOTICE TO CREDITOR.**

One of the tests to determine whether a notice that a transfer of property by a bankrupt to his creditor would operate as a preference should be imputed to a creditor is to determine whether reasonable cause to believe that such would be its effect actually existed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

**6. DEPOSITIONS (§ 83*)—VACATION—QUESTIONS—REFUSAL TO ANSWER.**

Where a bankrupt, who was a fugitive from justice, testifying by deposition, refused to answer certain cross-interrogatories on the ground that his answers might incriminate him, subsequent to the repeal of Rev. St. § 860 (U. S. Comp. St. 1901, p. 661), granting immunity by Act May 7, 1910, c. 216, 36 Stat. 352, and the answers thereto, even if made, would have been immaterial on the issue as to whether a conveyance by the bankrupt constituted a preference except so far as they might have tended to affect the bankrupt's credibility, his refusal to answer was not ground for the suppression of his entire testimony, nor did it furnish ground for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its exclusion in determining whether the grantee had reason to believe that the transaction, if sustained, would operate as a preference.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 219–226; Dec. Dig. § 83.*]

**7. APPEAL AND ERROR (§ 1011*)—FINDINGS—CONFLICTING EVIDENCE—REVIEW.**
Findings of the trial judge on conflicting evidence will not be disturbed on appeal unless overborne by the clear weight of the evidence as disclosed by the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. § 1011.*]

**8. BANKRUPTCY (§ 161*)—TRANSFER—RECORD—TIME.**
Under Rev. St. Ohio 1908, § 4134, requiring the transfer of real property to be recorded, where an alleged preferential transfer of real property by a bankrupt was executed more than four months before bankruptcy but was recorded within the time, it was subject to vacation by the bankrupt's trustee and was not barred by the four months' provision of Bankr. Act July 1, 1898, c. 541, §§ 60a, 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. § 161.*]

Appeal and Error from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Suit by E. Reeder Donohue, trustee in bankruptcy of John E. Humphreys, against Walter J. Carey. Decree for complainant, and defendant appeals and brings error. Writ of error dismissed, and decree reversed, with directions.

Michael G. Heintz, Benton S. Oppenheimer, and Morrison R. Waite, all of Cincinnati, Ohio (Waite & Schindel, of Cincinnati, Ohio, of counsel), for appellant.

Willis G. Durrell and David Davis, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This was a suit brought by the trustee against the appellant and others, in the District Court, to set aside an instrument, in form a deed, from the bankrupt to the appellant, conveying certain described real estate. All the respondents except appellant were dismissed during the trial. Appellant conveyed the property to certain of the respondents, who were found to have been innocent purchasers; and decree was entered in favor of the trustee for the value of the property in question, as fixed by the verdict of a jury, which was impaneled only for that purpose.

[1] The case was brought to this court upon appeal and error. Counsel are all agreed that appeal was the proper proceeding, and this is so clearly right that the error proceeding will be dismissed. The principal objections made to the decree will be stated as we progress.

[2] 1. It is urged that the bill and its amendments do not sustain the decree. These pleadings fail to disclose with certainty upon what theory the suit was instituted; that is to say, whether the design was to charge that the instrument was given with intent on the part of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the bankrupt to hinder, delay, or defraud his creditors and so was null and void under section 67d of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3449]), or whether it was meant to charge the execution of a preference within the meaning of section 60 of the act. It would seem that the purpose was to charge the commission of these acts alternatively, and the trial court appears to have given permission so to do; but, apart from any question of right thus to plead, the bill and the amendments alike state conclusions of law rather than specific facts. However, the appellant appears to have understood the trustee to charge the execution of a preference, for, after denying knowledge of insolvency of the bankrupt, appellant averred that he "had no reasonable cause to believe that he (the bankrupt) was insolvent, and did not know and had no reasonable cause to believe that said conveyance from said John E. Humphreys to Walter J. Carey would create a preference over any other of the creditors of the said John E. Humphreys." In spite of this it is contended that appellant was not "notified that he must answer to the charge that, at the time he accepted the deed from Humphreys, he had reasonable cause to believe that the enforcement of the transfer would effect a preference." No objection was made on this ground to the bill and its amendments, and indeed their sufficiency was in no wise challenged. Besides, the case was tried upon the theory of preference, and this was also the basis of the decree.

It is true, as counsel claim, that this court has held that, in a suit to set aside a voidable preference, it is necessary to allege that the person receiving the transfer had reason to believe that it was intended to give "a preference forbidden by law." In re Leech, 171 Fed. 622, 625, 96 C. C. A. 424. While that decision was rendered before, and the present transaction occurred since, the amendment of 1910 (Act June 25, 1910, c. 412, § 11, 36 Stat. 842 [U. S. Comp. St. Supp. 1911, p. 1506]) to section 60b, yet the element of reasonable belief of the creditor remains as a fact necessary in substance to allege. However, if the case made is otherwise sound, the most that could be accorded appellant would be to reverse and remand the cause for the purposes only of further and appropriate amendment to the bill and re-entry of the decree. Page v. Rogers, 211 U. S. 575, 581, 29 Sup. Ct. 159, 53 L. Ed. 332; Dietz v. Horton Mfg. Co., 170 Fed. 865, 872, 96 C. C. A. 41 (C. C. A. 6th Cir.); Newcomb v. Burbank, 181 Fed. 334, 336, 104 C. C. A. 164 (C. C. A. 2d Cir.). This could work no injury to any material right of appellant, and to do more than this would clearly prejudice the rights of the trustee and the creditors. It has been aptly said that "the bankruptcy act is remedial and should be interpreted reasonably and according to the fair import of its terms, with a view to effect its objects and to promote justice" (Botts v. Hammond, 99 Fed. 916, 920, 40 C. C. A. 179 [C. C. A. 4th Cir.]); and in working out these ends the bankruptcy courts have not indulged in technicalities wherever a liberal procedure was consistent with the substantial rights of the parties in interest.

[3] 2. It is contended that the evidence does not sustain the decree. The decree recites that the evidence was "adduced in open court," and after finding that the "paper writing, purporting to be a

deed" for the real estate in dispute, bears date August 6, 1910, and was recorded November 15, 1910, "within four months before the adjudication of John E. Humphreys, a bankrupt," it proceeds:

" * * * The court finds that the said John E. Humphreys was insolvent on August 6, 1910, and that said Walter J. Carey had at that time reasonable cause to believe that such a transfer to him, if made, would effect a preference, being given in payment of an antecedent debt. The court finds that said deed from Humphreys to said Carey, whether regarded as a transfer of title or as security for debt, is invalid."

All the witnesses except the bankrupt testified in open court, and irrespective of his testimony it is plain enough from the record that the finding should be sustained as to the fact of his insolvency at the date named; and it is equally clear that the effect of any enforcement of the transfer in issue would be to enable appellant to obtain a greater percentage of his debt than any other of the creditors of his class. A more difficult question arises respecting the existence of reasonable cause on the part of appellant at the date of the instrument to believe that his transaction with the bankrupt would, if carried out, effect a preference. Every question of this kind is necessarily controlled by the facts and circumstances of the particular case. Aside from some principles that have general application, it rarely happens that the facts and circumstances of other cases, even though kindred in character, are helpful in solving the question in hand.

[4] Thus it is a general rule that mere suspicion on the part of the creditor that his debtor is insolvent or that the effect of a given transaction with him would amount to a preference is not enough (First National Bank v. Abbott, 165 Fed. 852, 859, 91 C. C. A. 538 [C. C. A. 8th Cir.]; Stucky v. Masonic Savings Bank, 108 U. S. 74, 75, 2 Sup. Ct. 219, 27 L. Ed. 640), for, in the absence of substantial evidence in that behalf, his suspicions are fairly consistent with the ordinary desire of the creditor to assure himself of safety respecting the debt. On the other hand, general reputation for solvency of a debtor is not always a safe test of the good faith of his creditor who obtains or receives from him a transfer of property, because the relations between them and the circumstances of the transaction itself may satisfy every impartial mind that the particular creditor had abundant reason to believe that his debtor's financial reputation was false, while this might not be true at all in the debtor's transactions of an ordinary character with other persons. We say this both because of the claim made here touching the bankrupt's reputed solvency and of its apparent explanation of some of the transactions that are in evidence, though not involving a transfer of any of his own property, and in which not even a suspicion of insolvency was aroused.

[5] One way of testing the belief that should be imputed to the creditor receiving either a payment in money or a transfer of property in discharge of a past-due debt is to inquire whether reasonable cause to believe actually *existed*. Thus in Hewitt v. Boston Straw Board Co., 214 Mass. 260, 101 N. E. 424, 425, decided April 1, 1913, the Supreme Judicial Court of Massachusetts, when considering a

transfer alleged to be a preference under section 60 of the Bankruptcy Act, said:

"Where there is reasonable cause to believe that at the date of transfer within the statutory period the debtor is insolvent, and payment is accepted of a debt overdue, it is immaterial whether the creditor actually believes what may have been disclosed as to the true state of affairs. If he prefers to draw inferences favorable to himself and to ignore information which would have led to knowledge that his debtor was in failing circumstances, he cannot set up his own judgment to the contrary, even if honestly entertained, as a reason why he should be permitted to retain a prohibited advantage."

[6] It is strenuously urged that, in considering the question of appellant's reason to believe in the existence of facts amounting to a preference, the testimony of the bankrupt shall be excluded. His testimony was taken in Honduras upon direct and cross interrogatories, but he declined to answer some of the cross-interrogatories for the reason, as he stated, that they "might tend to incriminate" him; and a motion was made to suppress all his testimony because of his refusals to answer such cross-interrogatories. The motion was overruled, and we think rightly. It is to be observed that section 860 of the Revised Statutes (U. S. Comp. St. 1901, p. 661) was repealed before such refusals were made (Act May 7, 1910, c. 216, 36 Stat. 352); and this of course removed the foundation of that class of decisions which enforced answers by reason of the immunity the section afforded. Hence the bankrupt was at liberty to avail himself of the ancient rule that a witness shall not be compelled in any proceeding to give testimony which will tend to criminate him. Counselman v. Hitchcock, 142 U. S. 547, 563, 565, 12 Sup. Ct. 195, 35 L. Ed. 1110; State v. Thaden, 43 Minn. 253, 255, 45 N. W. 447; 3 Wigmore on Ev. § 2271, p. 3141. And to exclude all testimony the witness could give without incriminating himself would be at once to penalize the exercise of the privilege and to invest the adversary party with an obviously undue advantage. Illustration of the practical effect of such a course is presented here through the fact that the deposition was taken in a foreign country and filed January 20, 1912, while the motion to suppress was made the 25th of March following, just two days before commencement of the trial. To say the least of such a situation, some regard should be given to the relevance and materiality to the case of the particular questions declined and of any responsive answers that could have been made to them. The main, if not the sole, object of the interrogatories the bankrupt refused to answer was to discredit his testimony in chief; and it is not at all certain that if he had answered he would have discredited his testimony any more than it was by witnesses who testified before the court concerning transactions which they, either for themselves or for others, had had with the bankrupt; and it is conceded on all hands that he had fled and was living in Honduras at the time he gave his testimony. Apart from the bankrupt's credibility, these cross-interrogatories did not call for answers that were relevant to the transactions in issue; and so the testimony sought must be regarded as immaterial. Where this appears, an entire deposition cannot be suppressed any more than it could if the immaterial interrogatories had in all re-

spects been irrelevant. H. Scherer & Co. v. Everest, 168 Fed. 822, 826, 94 C. C. A. 346 (C. C. A. 8th Cir.); White v. Solomon, 164 Mass. 516, 519, 42 N. E. 104, 30 L. R. A. 537.

Such testimony as the bankrupt gave, if believed, tends strongly to establish the preference; but appellant on the witness stand denied the most important parts of the bankrupt's statements in that behalf; and still it must be said that there are features of the record that tend to corroborate the bankrupt and, aside from his testimony, to show grounds for reasonable belief on the part of appellant. It can serve no useful purpose, however, to recite the details of the testimony given either by the bankrupt or the other witnesses. The trial judge had the advantage of seeing and hearing all of the witnesses except the bankrupt; and every experienced lawyer knows what this means. While equal advantage exists here as respects the deposition of the bankrupt, yet this is not so as to the testimony of appellant; the important element of demeanor of the witness, like that of every other witness who testified before the court, is of course lacking.

[7] Indeed, the rule in such circumstances is not to disturb the judgment of a district court unless it is overborne by the clear weight of the evidence as disclosed by the record. Pugh v. Snodgrass, 209 Fed. 325, decided by this court November 4, 1913; Monongahela River Consol. C. & C. Co. v. Schinnerer, 196 Fed. 375, 379, 117 C. C. A. 193; L. & N. R. Co. v. Lankford, 209 Fed. 321, decided by this court December 2, 1913; The Printz Eitel Friedrich, 206 Fed. 898 (C. C. A. 2d Cir.). And see language of the present Mr. Justice Lurton, when speaking for this court, in City of Cleveland v. Chisholm, 90 Fed. 431, 434, 33 C. C. A. 157. It results that, upon all the facts and circumstances of the case, we cannot set aside the findings of the decree.[1]

[8] 3. It is insisted that recovery is barred by the four months' provisions of sections 60a and 60b. The argument is that the instrument in dispute is a deed of conveyance which, although recorded within four months of the bankruptcy, was effective from its delivery as against every person except a bona fide purchaser. The basis of this is the deed-recording statute of Ohio (2 Ann. Ohio Gen. Code, § 8543, p. 48), and the rule laid down in Wright v. Bank, 59 Ohio St. 80, 51 N. E. 876, construing old section 4134, which was like the present section 8543 (2 Bates, p. 2295). It was held in that case (syl. 6):

"As against subsequent bona fide purchasers without notice, a deed of conveyance of land, duly executed, must be recorded as provided in section 4134, Revised Statutes, but such record is not required as against other parties."

And it is then urged that the present case is governed by the principle settled in York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, and the cases following it. This argument ignores the broad distinction between cases like York Mfg. Co. v. Cassell and the one now under review. The class of decisions to

---

[1] Attention is called to the facts which were regarded as sufficient to charge preferred creditors with reasonable belief, etc., in Nat. City Bank v. Hotchkiss, Trustee in Bankrutpcy, 231 U. S. 50, 34 Sup. Ct. 20, 58 L. Ed. —, and also Mechanics' & Metals' Nat. Bank v. Ernst, Russell & Marshall, Trustees in Bankruptcy, 231 U. S. 60, 34 Sup. Ct. 22, 58 L. Ed. —, decided by the Supreme Court November 3, 1913.

which that case belongs involved instruments which were free from inherent legal infirmities, and, as to setting them aside, the law then accorded to trustees only the rights of the bankrupts, while the present case concerns an instrument that is denounced by law as a voidable preference, and the trustee is distinctly empowered to avoid it for that reason. The distinction we seek to make clear is recognized in Richardson v. Shaw, 209 U. S. 365, at page 378, 28 Sup. Ct. 512, at page 516 (52 L. Ed. 835, 14 Ann. Cas. 981), where Mr. Justice Day, in passing upon an alleged preference and the rights of the trustee in bankruptcy touching a certificate of stock which had been held in pledge under contract and delivered by the pledgee upon demand and payment, said:

"Consistently with the terms of the contract, as understood by both parties, the broker could not have declined to thus redeem and turn over the stocks, and, when adjudicated a bankrupt, his trustee had no better rights, *in the absence of fraud or preferential transfer, than the bankrupt himself*." (Italics ours.)

Again, in Rouse v. Ottenwess & Huxoll, 208 Fed. 881, decided by this court November 11, 1913, Judge Knappen stated the distinction thus:

"The doctrine that the bankruptcy trustee 'stands in the shoes of the bankrupt' has no application to transactions which the trustee is, by the express terms of the act, authorized to avoid."

Moreover, upon like reasons it would seem clear, though we need not decide, that Wright v. Bank, supra, 59 Ohio St. 80, 51 N. E. 876, would not be applicable to a case of preference if tested under and according to the Ohio statutes alone. For sections 11104 and 11105 of the Ohio statutes (5 Ann. Gen. Code, 449, 460) denounce preferences under stated conditions and authorize the appointment of trustees to institute suits to recover the property transfered and administer it for the equal benefit of all the creditors. In short, the state policy is in substantial accord with the national policy respecting the avoidance of preferences and the ultimate distribution of their proceeds. In re Farrell, 176 Fed. 505, 510, 100 C. C. A. 63 (C. C. A. 6th Cir.).

It remains to consider the effect of the four months' provisions of sections 60a and 60b. We look to the deed-recording act of the state for the purpose of determining whether, under that act, recording of the instrument under review was required. Concededly this was so as to bona fide purchasers; and the principle is settled in this court that, through the operation of section 60 upon a voidable transfer falling within such a state requirement, the trustee may avoid the transfer if registered within the four months' period. Loeser v. Savings Deposit Bank & Trust Co., 148 Fed. 975, 78 C. C. A. 597, 18 L. R. A. (N. S.) 1233. And in addition to the cases cited and commented on in the opinion in that case, see In re Beckhaus, 177 Fed. 141, 100 C. C. A. 561 (C. C. A. 7th Cir.). Counsel endeavor both to distinguish the Loeser Case and to show that it should not be followed. While we are satisfied from the evidence that in equity the instrument should be treated as a mortgage, yet we do not attach importance to this feature, because it has been held in Ohio that an instrument in form like this, unlike a legal mortgage, operates

upon delivery to transfer title and so is required to be recorded as a deed. Kemper v. Campbell, 44 Ohio St. 210, 218, 6 N. E. 566.[2] Now in applying the Loeser decision we observe that the instrument there under review was a chattel mortgage, while the one now in question is a deed. We also recognize the right in Ohio to fasten a lien upon property covered by an unregistered chattel mortgage as against the mortgagee, and the absence of such a right as to real estate held by an unrecorded deed; but a bona fide purchaser could acquire a better right to the property than that possessed by the holder of either of such unregistered instruments. In applying the rights of a trustee in bankruptcy to this situation, he stood no better than the bankrupt at the date of the Loeser decision, provided the initial transactions and the instruments representing them, the chattel mortgage in the one and the deed in the other, were free from any inherent legal infirmities such as fraud or voidable preference.

When the registration provision of section 60a was applied to the chattel mortgage involved in the Loeser Case, the court was confronted with the question whether the word "required" was sufficiently comprehensive to include an unregistered chattel mortgage. This could not be determined without considering all the means which were then open to creditors to fasten liens upon, and to bona fide purchasers to acquire title to, the property described in the chattel mortgage, for plainly the chattel mortgagee was bound to take the risk of such liens and purchases. This presented classes of persons as to whom registration was obviously "required," but there was no risk as to bankruptcy unless the transaction was tinctured with fraud or voidable preference. In re Klein, 197 Fed. 241, 116 C. C. A. 603. The situation, then, evidently demanded of the court an interpretation of the word "required" broad enough to embrace all transactions that could displace the rights of the holder of an unregistered chattel mortgage. Anything less than this would have rendered the word "required" meaningless.[3]

There can be no difference, then, between the ruling demanded in the Loeser Case and the principle that should govern the instant case. Concession that a creditor could not through attachment or the like have acquired a right superior to that of appellant under his unrecorded deed (Wright v. Bank, supra) only results in diminishing the classes of persons against whom record was required, for it is manifest that the class of possible bona fide purchasers none the less remained. How, then, can it be that the difference between a deed and a chattel mortgage, as respects form and classes against whom registration is required, amounts to a distinction between this case and the Loeser Case? Further, the form of the present instrument

---

[2] Whether, in view of later decisions, the rule of that case will be adhered to in Ohio does not require present consideration.

[3] We do not discuss the inference drawn by counsel from the amendment of 1910 to section 47a2 concerning the meaning of the word "required," because the change wrought by the amendment in the position of the trustee would, if counsel's inference be sound, place limitations upon both the words "transfer" and "required," and so operate to change their natural meaning and also the manifest intent of sections 60a and 60b; and yet there is nothing in the amendment itself of 1910 to section 47a2 to indicate any such purpose. Moreover, when the amendment was under consideration in Congress, the avowed object was simply to escape the rule in York Mfg. Co. v. Cassell (Cong. Rec. vol. 45, pt. 3, p. 2554).

and its inherent infirmities give to it every attribute that can be ascribed to a "transfer," as that term is used in either section 60a or 60b; and this was true as to that sort of an instrument, even as those sections stood at the date of the Loeser decision. The sections themselves make no distinction respecting the form or the subject-matter of the transfers they condemn; and hence the reason for avoiding such a deed is in every conceivable sense as clear and as strong as can exist in respect of a chattel mortgage. Page v. Rogers, supra, 211 U. S. at page 577, 29 Sup. Ct. 159, 53 L. Ed. 332.

It is vain to urge that the decision in the Loeser Case should not be followed. It is said that the reversal of this court in York Mfg. Co. v. Cassell impaired the strength of the Loeser decision; but, besides the obvious distinction between the cases, the decision in the latter was rendered more than seven months later than in the other. The claim that this court has decided (In re Klein, 197 Fed. 241, 116 C. C. A. 603) that, at the time the Loeser decision was rendered, the law required the existence of insolvency and reasonable cause to believe to be found as of the date of the transfer and not merely the date of the record is met by the fact that the Klein Case did not involve a preference, and also by the findings contained in the decree in this case.

Accordingly the writ of error is dismissed, and the decree below reversed, with direction to take proceedings in conformity with this opinion; but the costs incurred below in bringing the appeal and the proceeding in error to this court and the costs here will be divided.