(80 South. 94)

McALEER v. PEOPLE'S BANK. (1 Div. 41.)

(Supreme Court of Alabama. Nov. 14, 1918.)

1. BANKRUPTCY ☞159—RECOVERY OF PREFERENCE—"INSOLVENT."

To entitle trustee in bankruptcy to recover preference under Federal Bankruptcy Act, § 60b (U. S. Comp. St. 1916, § 9644), trustee must show that at time of transfer bankrupt was "insolvent," property under fair valuation being insufficient to pay debts, also that payment operated as a preference, and creditor had reasonable cause so to believe.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvent.]

2. BANKRUPTCY ☞310—SURRENDER OF SECURITY—SHARING WITH OTHER CREDITORS.

If bank sued by trustee in bankruptcy for recovery of preference by which bankrupt's unsecured debt was extinguished entirely, leaving a debt secured, is not satisfied with security, it may surrender it to bankruptcy court, and share equally with other creditors in any dividends.

3. BANKRUPTCY ☞304 — SUIT TO RECOVER PREFERENCE—QUESTION FOR JURY.

In suit by trustee in bankruptcy to recover preference from bank, question whether payment to the bank by the bankrupt constituted a preference held for the jury.

4. BANKRUPTCY ☞303(2) — RECOVERY OF PREFERENCE BY TRUSTEE—EVIDENCE.

In suit by trustee in bankruptcy for recovery of preference from bank, trustee's evidence to show common report that bankrupt, immediately before transfer, had contemplated bankruptcy, or was about to go into bankruptcy on account of insolvency, should have been admitted to show notice to bank of such condition.

5. BANKRUPTCY ☞303(2) — ACTION TO RECOVER PREFERENCE—EVIDENCE.

In suit for recovery of preference by trustee in bankruptcy, trustee should have been permitted to show by attorney for bankrupt that lender to bankrupt required, as condition to loan of full sum requested, payment of unsecured indebtedness to defendant bank, payment to which is claimed to have constituted preference.

6. BANKRUPTCY ⬳304—PREFERENCE—REASONABLE CAUSE FOR BELIEF BY CREDITOR—QUESTION FOR JURY.

In suit by trustee in bankruptcy against bank for recovery of preference, question of reasonable cause on part of bank to expect payment to it would effect a preference *held* for jury under evidence that lender to bankrupt had understanding in reference to loan with bank, etc.

7. BANKRUPTCY ⬳303(2) — PREFERENCE — EVIDENCE.

In suit by trustee in bankruptcy to recover preference from bank, if jury could infer lender to bankrupt acted in concert with bank officials, testimony sought to be elicited by trustee, in regard to statement by lender that he would loan sum requested only on condition bankrupt would pay bank, *held* admissible against bank.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Action by V. B. McAleer, as trustee in bankruptcy of Henry C. Meyer, against the People's Bank. From judgment of nonsuit, plaintiff appeals. Reversed and remanded.

Plaintiff, appellant here, sued as a trustee in bankruptcy of one Henry C. Meyer to recover $2,898.11 paid by said Meyer to defendant (appellee) on the 2d day of June, 1917, a short time (about two weeks) prior to the adjudication of said Meyer as a bankrupt; said suit being based upon the theory that said payment constituted a recoverable preference. Upon conclusion of the evidence the court below gave the general affirmative charge in favor of the defendant, and the plaintiff took a nonsuit with a bill of exceptions.

The testimony for the plaintiff tended to show the fair valuation of the property of said Meyer and the amount of said indebtedness on June 2, 1917, and his subsequent adjudication as a bankrupt, upon the petition of said Meyer, on June 14, 1917; that prior to May 1, 1917, said bankrupt had conducted two grocery stores in Mobile, but that he had closed one of the stores, taking the staples out of the store and adding them to the stock in the store which he continued to conduct; the balance of the stock was purchased by some one else, being sold at public outcry. It is further shown that wholesale merchants would sell him goods only for cash upon delivery. Numerous checks drawn by Meyer on the People's Bank were refused payment for a want of funds; and this, from Meyer's testimony, had happened from time to time. Prior to June 2, 1917, Meyer had consulted an attorney with reference to going into bankruptcy. Said Meyer was at the time indebted to defendant bank on promissory notes aggregating something over $2,800, unsecured, and about $1,300 secured indebtedness. A portion of the unsecured indebtedness was due, and another portion not yet matured.

Meyer applied to an agent to obtain a loan of money, and was in that manner brought in connection with one Pake, who agreed to loan $10,500 upon his (Meyer's) business property, for the purpose of paying off a prior mortgage of $7,000, the principal of which was not due, but the interest past due, and to pay on the indebtedness of the People's Bank. This loan was consummated. Meyer testified that Pake requested him to pay the People's Bank, and stated that he would have to pay the bank and the prior mortgage in order to get the loan through. The loan was consummated and the prior mortgage paid off. Plaintiff's testimony further tended to show that Pake's attorney prepared the check, and went with Meyer to the People's Bank, and that after paying off the prior mortgage the balance was used in the payment of the unsecured debt to said bank; that Meyer did not expect or want to pay the entire sum on such indebtedness, as much of it was not yet due, but, as the bank insisted, he acquiesced; that the check was not turned over to Meyer, but carried by the attorney to the bank in Meyer's company, Meyer testifying that he did not object to the money being paid to the bank, "but would rather have had a little of it myself. I found that they were not willing for me to have a little more of it, so I consented to the payment."

Plaintiff's evidence further tended to show that a few days prior to the time the loan was made, Pake, who was a customer at the bank, but in no manner connected therewith, saw the president of the bank, told him of the contemplated loan to Meyer, and stated to him that he might need some money in the future, and wanted to know about the mortgage being taken over, and that the president of the bank stated that if he (Pake) desired to make the mortgage loan to Meyer the bank would be willing to take the mortgage off his hands at any time, as they thought the property covered by the mortgage was worth considerably more than the loan.

The check for the balance of the loan lacked $80 of being a sufficient amount to pay the unsecured indebtedness, and in order to pay the same in full Meyer drew a check on the defendant bank for said sum, which overdrew his account. The president of the bank stated that the transaction made an impression on him, as "being out of the ordinary."

The evidence for the defendant tended to show the valuation of the property was in excess of that shown by the plaintiff, and Meyer therefore not insolvent; that the bank, and none of its officials or agents, had notice of the insolvent condition of Meyer, or any facts that would create a reasonable belief

as to such insolvent condition; that they knew nothing of his not being allowed credit by the wholesale merchants, knew nothing as to his being pressed for money, but were under the impression that he was doing well; that the president of the bank was spoken to by Pake in regard to the loan, as he was in the bank every day, and Pake was told that they would take the mortgage off his hands, as they considered it a good loan; that the bank had nothing to do with Meyer's application for a loan, and had not pressed him for money; that they had heard no rumors of Meyer's insolvency; that he had been a customer of the bank for 15 years, and that no insistence had been made upon his paying the notes; that the president of the bank did tell Meyer, at the time of payment, that he would let him have as much as $500 in the near future; that the notes evidencing the unsecured indebtedness were renewal notes; that Meyer had continued to do business and make deposits as usual up to June 2, 1917.

One Orr, who was at the time employed as a clerk by Meyer, testifying for the plaintiff, was asked the following question:

"Did you know whether or not it was a common rumor on the streets about his [Meyer's] going into bankruptcy as early as May?"

Defendant objected to the question. The objection was sustained, and the plaintiff excepted.

The attorney for Meyer was introduced by the plaintiff and asked whether or not in the conversation between Pake and Meyer if Pake said anything to Meyer about the payment of any portion of his indebtedness to the People's Bank. The defendant objected to the question. The attorney for the plaintiff then stated to the court that the purpose of the question was to show that Pake first agreed to loan $8,000, and that Meyer would not borrow that amount, and that Pake then offered to increase the loan to $10,500, but imposed the condition that Meyer would make payment to the People's Bank. The court sustained the objection, and plaintiff reserved exception.

Harry T. Smith & Caffey, of Mobile, for appellant.

Inge & Kilborn, of Mobile, for appellee.

GARDNER, J. The plaintiff, as trustee in bankruptcy of one Henry C. Meyer, brought this suit to recover $2,898.11 paid by the said Meyer to defendant bank on June 2, 1917, upon the theory that the payment constituted a recoverable preference under the provisions of section 60b of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1916, § 9644]), which, so far as pertinent here, reads as follows:

"If a bankrupt shall have * * * made a transfer of any of his property, and if, at the time of the transfer * * * and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person. And for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

[1] To entitle the plaintiff to recover, he must first show that at the time of the transfer the bankrupt was insolvent, as that word ("insolvent") is understood to mean in the Bankruptcy Act; that is, that a fair valuation of the bankrupt's property was insufficient in amount to pay his debts, and further that the payment operated as a preference in favor of the bank, and that the bank had reasonable cause to believe that the enforcement of the payment would effect a preference. Hewitt v. Boston Strawboard Co., 214 Mass. 260, 101 N. E. 424; Mechanics' & Metals Nat. Bk. v. Ernst, 231 U. S. 60, 34 Sup. Ct. 22, 58 L. Ed. 121; Carey v. Donohue, 209 Fed. 328, 126 C. C. A. 254; Stucky, Assignee, v. Masonic Sav. Bk., 108 U. S. 74, 2 Sup. Ct. 219, 27 L. Ed. 640; Grant v. Nat. Bk., 97 U. S. 80, 24 L. Ed. 971.

It is very ingenuously argued by counsel for appellee that the evidence was insufficient for submission to the jury, both as to the question of insolvency of the bankrupt at the time of the transfer, and also as to whether or not such payment in fact created a preference.

[2, 3] The evidence as to the financial condition of the bankrupt at the time of the payment, and the fair valuation of his property, have been very carefully considered, and to discuss the same here would serve no useful purpose. Suffice it to say that upon a careful examination of this evidence, viewed in the light of the argument of counsel, we are of the opinion that it was sufficient for submission to the jury upon the question of insolvency of the bankrupt at the time of the transfer. The payment extinguished entirely the unsecured debt of the defendant, leaving a debt of $1,300 secured. If the defendant is not satisfied with the security of the $1,300, he may surrender the same to the bankrupt court, and share equally with the other creditors in any dividends to be declared. We think it quite clear, therefore, that the question of preference was also sufficient for the jury's determination.

The last question in regard to reasonable cause for belief on the part of the bank that the payment would effect a preference is one which presents more difficulty, but the conclusion which we have reached upon the ques-

tion of evidence to be now discussed leaves a determination of that question unnecessary upon the present record, in view of another trial of the cause.

[4] The plaintiff offered to show the common report upon the streets of Mobile (where the bankrupt had for a number of years been engaged in business, and where the defendant bank was also engaged in business) that the bankrupt just immediately prior to the transfer had contemplated bankruptcy, or was about to go into bankruptcy on account of his insolvent condition. Objection to this question was sustained. In this we are of the opinion the court below committed error. The purpose of this testimony was, of course, not to show the bankrupt or insolvent condition of Meyer, but only to show notice to the defendant bank of such condition.

In Price v. Mazange & Co., 31 Ala. 701, it was held that, where the validity of a mortgage is impeached for fraud, the fact that the mortgagor, at the time of its execution, was "notoriously insolvent," is admissible in evidence, as tending to prove that such insolvency was known to the mortgagee. In discussing the question, the court said:

"The credit system rests, not alone, or even mainly, on the personal confidence which one man reposes in another. Ability to pay—responsibility to the coercive power of an execution—is a weighty consideration with one who parts with his goods on credit. Persons engaged in commerce and traffic are usually prudent, if not cautious. It is difficult to believe that merchants and traders will not learn the pecuniary condition of their customers, when that condition so vitally affects them, and is notorious in the neighborhood in which they are operating."

Speaking to a question somewhat similar to that here involved, the court in Humes v. O'Bryan, 74 Ala. 64, said:

"The rule is settled, however, that when once a partnership is shown to exist by independent testimony, it is then competent to prove a general reputation or common report of its existence, in order to impute a probable knowledge of such fact to a plaintiff. And for a like purpose the notoriety of a dissolution may be shown to charge one with notice of such fact."

See, also, Greenl. on Ev. (16th Ed.) §§ 14p, 140b; Cleveland Woolen Mills v. Sibert, Ward & Co., 81 Ala. 140, 1 South. 773; Hodges v. Coleman, 76 Ala. 104; Owen v. State, 74 Ala. 405.

There was evidence tending to show, as previously stated, the insolvent condition of Meyer at this time, and we are therefore of the opinion that the plaintiff should have been permitted to offer proof of the notoriety of this fact in the community in which both parties were engaged in business. This proof was one of such a character as to be important to the plaintiff, and in this ruling the court committed error, for which the judgment must be reversed.

[5-7] We are of the opinion that, with evidence of this character admitted and the testimony substantially the same as now presented in this record, upon another trial the affirmative charge should not be given for the defendant; but the question should be submitted to the jury for determination. Likewise we are of the opinion that the plaintiff should, upon another trial, be permitted to show by the attorney for Meyer that Pake required, as a condition for the loan of the full sum requested, the payment of the unsecured indebtedness to the bank.

We need not discuss the evidence in this respect further than to state that we think there was testimony tending to show that Pake and the president of the bank had some kind of understanding in reference to this loan, and the securing by the bank of the full payment of its unsecured debt, sufficient for a submission of this question to the jury. If the jury may reasonably infer that Pake was acting in consort with the bank officials, then, of course, the testimony sought to be elicited in regard to the statement made by Pake would be admissible against the bank.

For the error indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

McCLELLAN, SAYRE, and SOMERVILLE, JJ., concur.