### ARMOUR & CO. v. LOUISVILLE PROVISION CO. *

(Circuit Court of Appeals, Sixth Circuit. July 14, 1922. On Motion for Rehearing, October 13, 1922.)

No. 3597.

**I. Trade-marks and trade-names and unfair competition ⬤⟿3(4)—Star may be valid trade-mark, if not already exclusively appropriated.**

The word "star," or symbol thereof, should be regarded as fanciful and as suggestive, rather than as purely descriptive, and thus as capable of being made the subject of a valid trade-mark, if not already exclusively appropriated.

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 258 U. S. —, 43 Sup. Ct. 164, 67 L. Ed. —.

2. **Trade-marks and trade-names and unfair competition 28—Star not invalid as trade-mark because applied to but one grade of manufactured product.**

The word "star" would not necessarily be invalid as a trade-mark merely because applied to but one grade of manufactured product.

3. **Trade-marks and trade-names and unfair competition 32—Star not invalid as trade-mark because associated with name of manufacturer or other words not adopted as part thereof.**

The word "star" or symbol thereof would not fail of creating a valid trade-mark merely because used in association with the name of the manufacturer or other words not adopted as part of the trade-mark.

4. **Trade-marks and trade-names and unfair competition 93(1)—Burden on claimant of trade-mark to establish its adoption.**

The question of whether claimant or his predecessor actually adopted as a trade-mark a word or symbol thereof is distinctly one of fact, the affirmative of which the claimant has the burden of establishing.

5. **Trade-marks and trade-names and unfair competition 93(3)—Evidence held not to establish adoption of word as trade-mark independently of association with corporation's name.**

Evidence *held* not to establish the adoption of a word as a trade-mark independently of the name of the corporation with which it was used, and that the use of the same word by another corporation as a part of its trade-mark was not an infringement.

6. **Trade-marks and trade-names and unfair competition 45—Registration does not create, nor is it essential to validity of, trade-mark.**

Registration does not create a trade-mark, nor is it at all essential to its validity.

7. **Trade-marks and trade-names and unfair competition 93(2)—Refusal to admit in evidence Patent Office rejection of application for registration of trade-mark held not erroneous.**

Under Trade-Mark Act (Comp. St. § 9485 et seq.), the rejection by the Patent Office of an application for registration of a trade-mark is not an adjudication of what the trade-mark of another is, deciding no questions other than that the applicant was not entitled to its exclusive use, or whether they were so similar to another as to be confusing, and in a suit for infringement it was not error to refuse to admit in evidence such rejection.

8. **Trade-marks and trade-names and unfair competition 68—To sustain unfair competition, there must be tendency to palm off goods as those of another.**

To sustain a charge of unfair competition, it must at least appear that defendant's conduct had a tendency or was calculated to palm off his goods as those of plaintiff.

9. **Trade-marks and trade-names and unfair competition 70(1)—Use of trade-mark held not unfair competition.**

The use of a trade-mark by a corporation engaged in preparing, packing, and selling meat products which was, with the exception of the use of one word and its symbol, so essentially different in design, size, wording, and color from a trade-mark used by another corporation engaged in the same business as not to deceive a purchaser of ordinary intelligence as to the identity of the products of the corporations, was not unfair competition.

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Suit in equity by Armour & Co. against the Louisville Provision Company. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 275 Fed. 92.

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Helm Bruce, of Louisville, Ky. (A. B. Stratton, of Chicago, Ill., and Bruce & Bullitt, of Louisville Ky., on the brief), for appellant.

Edw. P. Humphrey and Louis Seelbach, Jr., both of Louisville, Ky. (Humphrey, Crawford & Middleton, of Louisville, Ky., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff-appellant is a corporation organized in 1900 under the laws of Illinois, as successor to a partnership of the same name, and has been engaged during its entire corporate existence in the business of preparing, packing, and selling meat products, including hams and bacons, at Chicago, Ill., and elsewhere throughout the United States, that having likewise been the business of its copartnership predecessor. Defendant-appellee is a corporation organized in 1910 under the laws of Kentucky, and ever since engaged at Louisville, Ky., in preparing, packing, and selling meat products as a competitor of plaintiff. In 1918 plaintiff filed in the court below its bill, asserting the valid adoption in 1877 by the copartnership of Armour & Co., and the continued use thereafter by the copartnership and the corporation, respectively, of a trade-mark (for hams and bacons of high-grade quality) consisting of the symbol of a star, and, as an alternative, the word "Star." The bill alleged infringement of plaintiff's trade-mark by defendant in the use of the brand "Southern Star" upon hams and bacons of defendant's marketing. Unfair competition was also asserted. Defendant denied that either plaintiff or its predecessor was the original user of the "Star" brand or mark, and asserted that the use of the same was of common right. There was also denial that plaintiff had exclusively either the ownership of or the right to use the asserted trade-mark in Kentucky or elsewhere, or that plaintiff had ever used it except in connection with the word "Armour," as "Armour's Star," admitting, however, that plaintiff's trade-mark has become known to the public as "Armour's Star." Both trade-mark infringement and unfair competition were denied. It appeared upon the hearing (with slight exceptions, the testimony was all taken in open court) that plaintiff's asserted "Star" trade-mark had never been used by it or its predecessor, except in connection with its best grade of hams and bacons; the name "Shield" being applied to its second grade, and the name "Banana" to its third or poorest grade, of hams and bacons. It also appeared that defendant's application for registration of its trade-mark "Southern Star" was, upon plaintiff's opposition, rejected by the Patent Office.[1]

The District Judge filed a written opinion (275 Fed. 92) finding that as early as 1876 plaintiff and its predecessor had used continuously and very extensively, throughout the country, including Kentucky, the word "Star," in connection with the words "Armour & Co." or the word "Armour," and also the emblem of a star in connection with those words, upon vast quantities of its hams and bacons, and

---

[1] We have not attempted to summarize either the bill or answer further than essential to the proper disposition of the case.

that since 1910 the defendant, with knowledge of such use by plaintiff, had itself used the words "Southern Star," in "combination with the emblem of a star, upon its hams and bacons and meats prepared in Louisville, Ky., and sold throughout that state," to the extent of about 15 per cent. of its product. The opinion was expressed that the word "Star" could not, standing alone, be the subject of a valid trade-mark, although it was recognized that the words "Armour's Star" might be; that it did not satisfactorily appear from the testimony that "there had been established in the public mind a secondary meaning of the word 'Star' "; that not only could not the use of defendant's mark "Southern Star" infringe the use of a trade-mark "Armour's Star," but that the testimony failed satisfactorily to show that any purchaser had been deceived "into the use of any of defendant's hams or bacons, or into any purchase thereof as those of plaintiff instead of those of defendant." There was conclusion of noninfringement of trade-mark and lack of unfair competition. The opinion seems thus sufficiently summarized for present purposes.

[1] Plaintiff asserts no trade-mark in the words "Armour's Star." It bases its right to relief squarely upon the proposition that its actual trade-mark was "Star," either as a word or as a symbol, and that not only was such trade-mark valid originally, but that it has acquired a secondary meaning as indicating plaintiff's product. We think that, at least by direct analogy to words such as "Queen," "Monarch," "Victor," "Pillsbury's Best," the word "Star," or a symbol thereof, should be regarded as fanciful and as suggestive, rather than as purely descriptive, and thus as capable of being made the subject of a valid trade-mark, if not already exclusively appropriated. Thomas G. Plant Co. v. May Co. (C. C. A. 6) 105 Fed. 375, 378 et seq., 44 C. C. A. 534; Menendez v. Holt, 128 U. S. 514, 520, 9 Sup. Ct. 143, 32 L. Ed. 526. And such view seems to accord with patent office practice.

[2, 3] We also think such word would not necessarily be invalid merely because applied to but one grade of plaintiff's manufactured product. Dixie v. Stearns (C. C. A. 7) 185 Fed. 431, 434, 107 C. C. A. 501. And we do not doubt that the adoption of the word "Star," or a symbol thereof, would not fail of creating a valid trade-mark merely because used in association with the name of the manufacturer, or other words not adopted as part of the trade-mark. Layton v. Church (C. C. A. 8) 182 Fed. 24, 29, 104 C. C. A. 464.

[4-6] But, as applied to the case before us, the question whether plaintiff or its predecessor actually adopted as its trade-mark the word "Star," or a symbol thereof, as distinguished from a trade-mark "Armour's Star," is distinctly one of fact, the affirmative of which plaintiff has the burden of establishing. In our opinion, plaintiff has not sustained this burden. Its asserted adoption of the word or symbol "Star" as a trade-mark is not admitted by defendant. There is no direct testimony (by any one claiming personal knowledge) as to the fact of such original adoption. Nor is such adoption confirmed by proof of registration. Not that registration creates a trade-mark, or is at all essential to its validity; its existence, however, might afford some evidence of the identity of the trade-mark as asserted at the time

of registration. There is testimony on the part of several witnesses, the most prominent being employees or representatives of plaintiff, that from the time of the earliest knowledge of the respective witnesses Armour & Co. had used the symbol or mark of the "Star" on their highest grades of hams and bacons, and that such practice has been continued until the present time, and that in the mind of the public, during the time covered by the testimony of these witnesses, "Star" ham and "Star" bacon, "as gathered from conversations with dealers and consumers, always meant Armour's Star ham and Armour's Star bacon"; but it is satisfactorily established by the testimony of plaintiff's representatives that in Armour & Co.'s labels, brands, and advertising matter generally, including also its large display cards, the name given was always "Armour's Star" ham, or "Armour's Star" bacon, as the case might be—no use of the word "Star" (or its symbol), except as directly preceded by the word "Armour's," being shown; that about the year 1906 plaintiff adopted the blue and yellow label, which reads "Armour's Star Ham, selected stock, mild cure. Armour & Co.," and that such label has been in use ever since; that since about the year 1916 no symbol star has been used on any of Armour & Co's advertisements, either labels or burning brand (none of plaintiff's witnesses carry their knowledge of plaintiff's trade-mark back of the year 1886 or 1887). Indeed, one of plaintiff's directors says:

"Our advertising has been confined exclusively to the 'Star' brand, 'Armour's Star,' using the word 'star,' or symbol star, in connection with the word 'Armour's,' in connection with our choicest hams and bacons, our highest grade. 'Armour's Star' is indicative of our choicest grade."

Moreover, it would seem unnatural that plaintiff and its predecessor should deliberately adopt the word "Star" (or its symbol) as its sole trade-mark, in view of the fact that other manufacturers had previously used or were using the star trade-mark in connection with hams and bacons. It affirmatively appeared by the bill of complaint that as early as 1875 one Baltz, of Chicago, merchandised hams and bacon under the trade-mark "Star of the West," and plaintiff asserts that in 1893 it purchased this trade-mark. It also appears that about the year 1870 George F. Davis & Co., of Cincinnati, adopted a brand in connection with the sale of hams and bacon consisting of a five-pointed star, with the symbol of a star in one of the points thereof, which Davis & Co. apparently called their "Star Brand," and that this trademark was so used by Davis & Co. until they went out of business in 1887 or 1888, afterwards being used by Jacob Vogel & Son, of Cincinnati, who are said to still use it.

True, the fact of actual sale of the trade-mark by Davis to Vogel is largely hearsay, and it does not affirmatively appear that the sale was accompanied by a transfer of the business, although that is perhaps inferable, and thus Vogel & Son may have acquired no legal right to the use of the mark; also, neither Davis nor Vogel may have had any trade in Louisville, but presumably plaintiff was fully aware of the use of this trade-mark in connection with sales of hams and bacon in a by no means negligible portion of the territory covered by plaintiff's trade. It would thus be unnatural that plaintiff should adopt its now

asserted trade-mark without distinguishing the product as "Armour's Star," or in other appropriate way.[2] Moreover, defendant presented a large amount of credible testimony, especially on the part of retail dealers, to the effect that Armour's name was better known than the word "Star"; that Armour's Star was generally called for by that name, and tending strongly to discredit the assertion that "Star" hams and "Star" bacon, without more, had come to indicate Armour's goods.

We conclude that plaintiff has not satisfactorily established the adoption and use of its alleged trade-mark "Star," except as part of a trade-mark "Armour's Star" (we have no occasion to decide whether the words "Armour's Star" would constitute a valid trade-mark); that the conclusion of the District Judge that it did not satisfactorily appear from the testimony that a secondary meaning of the word "Star" in the public mind had been established cannot be rejected as against the weight of the evidence (Carey v. Donohue [C. C. A. 6] 209 Fed. 328, 333, 126 C. C. A. 254); that upon the facts hereinafter mentioned, in connection with the subject of unfair competition, defendant's use of its trade-mark "Southern Star" would not infringe the trade-mark "Armour's Star"; and that the District Judge thus did not err in denying relief on account of the alleged trade-mark infringement.

[7] We may add, in this connection, that in our opinion it was not error to reject plaintiff's offer of the record of the Patent Office rejection of defendant's application for registration. Such rejection was clearly not an adjudication upon the fact question of what plaintiff's trade-mark actually was. It assumed to decide no questions other than whether defendant was entitled to the exclusive right to the words "Southern Star," or whether plaintiff's mark and defendant's mark were so similar as to be likely to confuse, or perhaps both those questions. See Trade-Mark Act of 1905, as amended (Comp. Stat. 1916, § 9485 et seq.).

[8, 9] As to unfair competition: In view of the conclusion reached as to plaintiff's established trade-mark, we think unfair competition was not satisfactorily established. To sustain a charge of unfair competition it must at least appear that defendant's conduct had a tendency (or was calculated) to palm off its goods as those of plaintiff. Goodyear Co. v. Goodyear Rubber Co., 128 U. S. 598, 604, 9 Sup. Ct. 166, 32 L. Ed. 535; Howe Scale Co. v. Wyckoff, 198 U. S. 118, 140, 25 Sup. Ct. 609, 49 L. Ed. 972; Rathbone v. Champion Co. (C. C. A. 6) 189 Fed. 26, 30, 110 C. C. A. 596, 37 L. R. A. (N. S.) 258. The general principles applicable to cases of this nature are well understood. In their application each case must turn largely upon its own circumstances. About 15 per cent. of defendant's product was wrapped and labeled. Except in the use of the word "Star," it would

_____

[2] In the list of registered trademarks for hams and bacon by other manufacturers of "Star" brands (word or symbol or both), offered by defendant and excluded, but sent up with the record, appears one registered in 1870, one in 1872, another in 1873, together with the Davis & Company brand, as registered in 1874; some, and perhaps all, of these seem to antedate the claimed adoption of plaintiff's trademark. While this evidence was offered by way of certified copy of registration from the public records, and may be open to consideration upon the proposition we are now considering, we prefer to pass it by.

be difficult to construct labels more essentially different that those of plaintiff and defendant. Plaintiff's label is a comparatively small oval (or a circle), reading as already stated; the words "Armour's" and "Ham" being in blue letters upon a yellow field, and the word "Star" being in white letters upon a blue field. The other words are in black upon a yellow field. Plaintiff's name (not its address) appears in comparatively small letters at the foot of the label, which is decidedly lacking in ornamentation and is of dignified simplicity. Defendant's labels are comparatively large and quite elaborate. Each of those presented as characteristic have the words in prominent letters "Southern Star Brand," accompanied by a star in symbol. Defendant's name and address appear prominently upon the face of the labels. In the center of each label appears a farmyard scene. It is hard to believe that even the casual and careless purchaser would be deceived by defendant's labels into thinking they were purchasing plaintiff's goods. The remaining 80 to 85 per cent. of defendant's product is sold unwrapped and merely skin-branded, as is a part of plaintiff's product. But here again, while the differences between the respective skin-brands are not so marked as in the case of the labels upon the wrapped product, they are nevertheless pronounced. Plaintiff's brand reads "Armour's Star U. S. Inspected and Passed Est. 2A"; the words being disposed in three parallel lines, "Armour's" being above the word "Star," which in turn is above the remaining words. Defendant's brand consists of a large, five-pointed star, across which are the words "Southern Star"; below these words, and still in the star, the word "Brand"; below the star the word "U. S.," on the line below "Inspected and Passed," and below (a fifth line) "Est. 995."

Having in mind that since about the years 1914 to 1916 no star symbol has been used on any of plaintiff's advertisements, labels, or brands, the testimony that when customers wanted defendant's goods they asked for "Southern Star," that Armour's name was better known than the word "Star," and that "Armour's Star" was generally called for by that name (thus tending to show that "Armour's" was the dominant portion of plaintiff's trade-mark); the fact that retailers and large consumers are not as easily deceived as the small and casual consumer; the statement of the District Judge in his opinion (which we quote in the margin),[3] and the natural probability that, in cases where the ham or bacon was sold by the retailer cut in slices, the consumer would not be very likely to pay attention to the brands—we are not convinced that we would be warranted in setting aside the trial judge's conclusion of lack of tendency to deception or unfair competition.

---

[3] "* * * The testimony heard in plaintiff's behalf does not satisfactorily, and without mere inference or hearsay, show that any purchaser whatever, either for his own use or for sale to others, has been deceived into the use of any of defendant's hams or bacon, or into any purchase thereof as those of the plaintiff instead of those of the defendant. On the contrary, the fact that no person of ordinary intelligence was at all likely to be so deceived by defendant's brands and marks was shown clearly by the testimony of so many witnesses that further testimony on that phase of the case was stopped by the court, when quite a score of other witnesses were present ready to testify for defendant to the same effect. In the almost entire absence of any con-

There is evidence tending to show deception (or perhaps attempted deception) on the part of some retailers; but, taking into account the entire record, we are unable to say with any confidence that defendant is responsible therefor. Rathbone v. Champion Co., supra, 189 Fed. at pages 32, 33, 110 C. C. A. 596, 37 L. R. A. (N. S.) 258. Indeed, there is an abundance of apparently reliable testimony that defendant's goods have been sold both to dealers and consumers generally on their merits. The asserted fact that defendant's "Southern Star Brand" is inferior to plaintiff's "Star," and that it is sold at a less price and in active competition, has no appreciable tendency to show unfairness in competition.

Plaintiff complains that certain of its proffered testimony was improperly rejected. We think the result would not be different if consideration were given to everything fairly admissible.

The conclusion we have reached makes it unnecessary to consider the asserted defense of laches.

The decree of the District Court is affirmed.

### On Motion for Rehearing.

The petition for rehearing must be denied. One feature only of the petition seems to call for special mention. Our opinion states that:

"It is satisfactorily established by the testimony of plaintiff's representatives that in Armour & Co.'s labels, brands, and advertising matter generally, including also its large display cards, the name given was always 'Armour's Star' ham, or 'Armour's Star' bacon, as the case might be—no use of the word 'Star' (or its symbol), except as directly preceded by the word 'Armour's,' being shown."

In challenge of the correctness of this statement, reference is made to Exhibit No. 25, described in the testimony as "containing the figure of a star and above it the words 'Armour & Co.,' and below it the word 'Chicago,'" which the testimony states "is a label we put on our wrapped hams and bacon from my earliest recollection up to about 1906" (the witness "first went with Armour & Co. in 1891, and went into the advertising department in 1896").

Exhibit No. 25 is not at hand, and inferably did not come up with the record. But that exhibit, as above described, is not enough to discredit the quoted statement in our opinion, nor change the conclusion there arrived at. The difference between "Armour & Co." and "Armour's" in that instance is not very significant. Indeed, the witness, immediately following his testimony as quoted above, identified "another paper containing a circular figure with a star in the center, and the word 'star' written across the star, the word 'Armour's' above and other

vincing testimony from the plaintiff on this point, the court thought further testimony thereon by the defendant unnecessary. In saying this, the court does not by any means overlook the testimony of the witnesses for the plaintiff. Quite the reverse, for we have reached these conclusions after a careful study of every part of that testimony, and especially as it bears upon the question of infringement and unfair competition." This quotation seems to make unnecessary further reference to plaintiff's contention that actual deception need not, as matter of law, be shown, and that it is enough if defendant's labels are calculated to deceive.

283 F.—4

words beneath," which paper, called a sticker or notice, the witness says "was pasted on our wrapped hams, calling the attention of the public to the quality of the contents. It was used concurrently with the last exhibit" (Exhibit 25).