

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Tom L. Beauchamp
Secretary of State
Austin, Texas

Dear Sir:       Attention of Mr. Claude A. Williams

Opinion No. O-983
Re: Under the facts set forth, did the
Secretary of State's office err in
approving and filing the application
for registration of the trademark
"The Brightest Star in the Milky
Way" by Dairyland, Incorporated? If
so, are they authorized to cancel
such registration?

Your request for an opinion on the questions as
are herein stated has been received by this office.

Your letter reads in part as follows:

"On March 3, 1939, W. K. Brown, doing
business as W. K. Brown Dairy in San Antonio,
Bexar County, Texas, presented by mail to
this office an application for registration
of a trademark, which application is marked
Exhibit 'A' and attached hereto.

"On March 7, this office wrote Mr. Brown
that his application was not in order for the
reason that it did not state how long the
trademark had been in use by him. The require-
ment about the length of time a trademark has
been used is a departmental requirement and
has been in effect in this Department for a
number of years. At the same time, we advised
Mr. Brown that we were enclosing an application
form and that he could fill out the form in
lieu of the application which we were returning
to him or he could correct his application so



as to show how long he had been using the trademark and/or trade name.

"On March 9, 1939, we received a letter from Marion D. Johnson, advertising agent of Dairyland, Incorporated, of San Antonio, Texas, advising us that she had noticed in the 'San Antonio Light' of March 4 that W. K. Brown Dairy had filed with the County Clerk of Bexar County a facsimile of a proposed trademark and trade name and that it contained the phrase 'The Brightest Star in the Milky Way', that this phrase had been copyrighted by Dairyland, Incorporated, and that said trademark and trade name had been filed in the Copyright Office of the Federal Government in Washington, D. C., and that Dairyland, Incorporated had been using the trade name and trademark since February 21, 1936, and attached to this letter was a clipping from a Fort Worth newspaper published on February 21, 1936. Marion D. Johnson, on behalf of Dairyland, Incorporated, protested against this office approving and filing the proposed trade name and trademark presented by W. K. Brown Dairy.

"On March 9, 1939, we advised Marion D. Johnson that our records did not show that such a trade name or trademark using the phrase 'The Brightest Star in the Milky Way' had been approved and filed in this office.

"On March 10, 1939, this office received the application of Dairyland, Incorporated to have registered as a trademark 'The Brightest Star in the Milky Way', which application is attached hereto and marked Exhibit 'B' and is attached to Exhibit 'A'.

"On March 13, 1939, the corrected application of the W. K. Brown Dairy was received, which application is attached hereto and marked Exhibit 'C'.



"With all these facts before this office, it was decided that Dairyland, Incorporated had been using this trade name and trademark since Febru ry 21, 1936 and that W. K. Brown Dairy had used it since the 2nd day of March, 1939, or approximately ten days before the date we received their corrected application for registration of the trademark. Believing that the party having priority of use was entitled to have preference in the registration of the trademark, we approved and filed on March 17, 1939, the application of Dairyland, Incorporated and returned, refused, the application of W. K. Brown Dairy.

"We desire that you advise us upon the following questions:

"(1) Under the above facts, did this office err in approving and filing the application for registration of the trademark 'The Brightest Star in the Milky Way' by Dairyland, Incorporated?

"(2) If you have answered the above question 'yes', then advise us if we are authorized to cancel the registration of Dairyland, Incorporated."

Articles 844, 847 and 851, Revised Civil Statutes read as follows:

"Art. 844. Any person, firm or corporation engaged in the dairying business, or in the distribution or sale of milk requiring the use of bottles, may file in the office of the county clerk of the county in which it is expected such person, firm or corporation will sell or distribute milk, a fac simile or description of the name or names, trade name, mark or design used by such person, firm or corporation for advertising purposes, and cause such fac simile or description to be published in a public newspaper published in such county for three successive weeks, and the act of filing and publication shall operate to secure to such dairyman, milk distributor or milk dealer, sole and exclusive

right to use in said county or counties, said name or names, trade name. mark or design.

Art. 847. Any person, firm or corporation engaged in the dairying business or the sale or distribution of milk, who shall have filed with the county clerk of the county in which they may be engaged in the distribution or sale of milk, a name or names, trade name, mark or design as herein provided, may cause to be engraved, etched, blown in or impressed or otherwise produced upon the bottles owned by said person, firm or corporation such name or names, trade name, mark or design, and when such name or names, trade name, mark or design is so impressed upon a bottle, such bottle shall be prima facie the property of the person, firm or corporation which may appear upon the record of the office of the county clerk of such county to be the owner of such name or names trade name, mark or design either as the original owner or transferee, as herein provided.

"Art. 851. Every person, association or union of workingmen, incorporated or unincorporated, that has heretofore or shall herafter adopt a label, trade mark, design, device, imprint or form of advertisement, shall file the same in the office of the Secretary of State by leaving two fac simile copies, with the Secretary of State, and said Secretary shall return to such person, association or union so filing the same, one of said fac simile copies along with and attached to a duly attested certificate of the filing of same, for which he shall receive a fee of one dollar. Such certificate of filing shall in all suits and prosecutions under this chapter be sufficient proof of the adoption of such label, trade mark, design, device, imprint or form of advertisement, and of the right of such person, association or union to adopt the same. No label, trade mark, design, device, imprint or form of advertisement shall be filed as aforesaid that would probably

be mistaken for a label, trade mark, design, device, imprint or form of advertisement already of record. No person, or association shall be permitted to register as a label, trade mark, design, device, imprint or form of advertisement any emblem, design or resemblance thereto that has been adopted or used by any charitable, benevolent or religious society or association, without their consent."

In the case of Dilworth vs. Hake, 64 SW 2nd 829, it was held the right to the use of a trade name belongs to the person that first appropriated the name.

We quote from the case of Russ vs. Duff, 49 SW 2nd 905 as follows:

"Priority in adoption and use of trade names confers a superior right to the use thereof, and, since appellee first used the name theretofore used by the corporation, she acquired a priority to the use thereof, and the appellant could not, by the mere filing of such affidavit to do business under a fictitious name defeats appellee's right to continue to use such names." Also see Tex. Jur., Vol. 41, page 383.

We quote from Corpus Juris, Vol. 63, pages 337, 340 and 470 as follows:

"A trademark is acquired by mere adoption and user as such, subject to such well-established rules as to what may be exclusively appropriated as a trademark, and as to what manner of use will constitute the mark used a trademark. The mark must be used in this country in order to acquire a trademark in this country.

"The one who first employs a trademark in connection with a particular class of goods acquires a prior and exclusive right to use it in connection with that class of goods, notwithstanding the subsequent user first registers the mark, and one not the originator or first



user thereof is entitled only to the distinctive features added by him.

"Only the owner of a trademark has the right to register it and the trademark, trade name, symbol or design designating ownership of a business may be registered. Though a trade name may be registered, and exclusive use thereby reserved under a statute authorizing appropriation for use as a trademark, any form, symbol or name to designate the origin or owner thereof."

In the case of Armour & Company vs. Louisville Provision Company, 283 Fed. 42, and a long list of cases cited therein the courts have held that registration does not create a trademark, nor is it at all essential to its validity.

In the case of Cochran, Hill & Company vs. A. H. Kuhlemann Company, 136 Fd. 525, the court held to entitle plaintiff the use of trademark, or to protect plaintiff and its mark against infringement, it was not necessary that the trademark should have been registered by plaintiff.

In the case of Great Atlantic & Pacific Tea Company vs. A. & P. Radio Store, 20 F. Supp. 703, it was held that a title to a trademark is independent of its registration.

In view of the foregoing authorities, you are respectfully advised that it is the opinion of this department that your first question should be answered in the negative. Therefore, it is not necessary to answer your second question.

Trusting that the foregoing answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Ardell Williams*

Ardell Williams
Assistant

APPROVED JUN 23, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS
"APPROVED"